IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIN ZHU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0882-N |
| | § | |
| ERIC H. HOLDER, | § | |
| United States Attorney General, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

This Order addresses Defendants Eric H. Holder, United States Attorney General, Janet Napolitano, Secretary of Department of Homeland Security ("DHS"), Michael Aytes, Acting Deputy Director of United States Citizenship and Immigration Services ("USCIS"), and Robert S. Muller, Director of Federal Bureau of Investigation's ("FBI") motion to dismiss Plaintiff Min Zhu's ("Zhu") complaint for lack of jurisdiction and failure to state a claim [6]. Because 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of subject matter jurisdiction to decide Zhu's claims, the Court grants the motion.

### I. Zhu's I-485 Application for Adjustment of Status

Zhu is a native and citizen of mainland China seeking to adjust her status to Legal Permanent Resident ("LPR") in the United States. She filed an I-485 application for adjustment of status with the USCIS Vermont Service Center on September 26, 2005.

USCIS transferred her application to the Texas Service Center[1] in March 2007. Twice, the Texas Service Center requested additional evidence from Zhu in order to process her claim. It received all of the documentation it required on January 9, 2008. To date, USCIS has not adjudicated her I-485 application.

According to Defendants, USCIS cannot lawfully adjust Zhu's status at this time because no visa numbers are available to allocate to her application. In other words, her visa category is not "current."[2] Zhu acknowledges that USCIS cannot favorably adjudicate her claim until her visa category is current, but alleges that USCIS has unreasonably delayed the processing of her application. Thus, she seeks a writ of mandamus compelling USCIS to adjudicate her I-485 application within thirty days of her visa category becoming current on the Department of State's Visa Bulletin. She relies on the Mandamus Act, the Administrative Procedure Act, and the Declaratory Judgment Act to support her claim. The Defendants move to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

---

[1] According to USCIS, it transferred Zhu's application to the Texas Service Center in order to expedite its processing.

[2] A visa category being current refers to a process the State Department uses to allocate a limited number of visas among groups of applicants. *See infra* Part III.B. From the time that USCIS received all of the information it required to adjudicate Zhu's application to date, her visa category was current for a total of 19 days. *See* App. to Defs.' Mot. to Dismiss [7] at 8-10.

## II. MOTION TO DISMISS STANDARD

A party that believes jurisdiction to be improper may challenge the court's authority by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Once jurisdiction is challenged, the burden rests upon the party seeking to invoke the court's jurisdiction to prove that jurisdiction is proper. *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995). In deciding a jurisdictional challenge, the court may look beyond the complaint's jurisdictional allegations to determine if jurisdiction is present. That is, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Raming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

When a party files a Rule 12(b)(1) motion in conjunction with other Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* at 161 (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* at 161. Thus, the Court turns first to Defendants' motion to dismiss under Rule 12(b)(1). Because it finds that it lacks subject matter jurisdiction, the Court need not consider Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim.

### III. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER ZHU'S CLAIMS

Defendants argue that 8 U.S.C. § 1252(a)(2)(B) strips the Court of jurisdiction to evaluate USCIS's decision not to adjudicate an application for adjustment of status in the absence of an available visa number. The Court agrees.

#### *A. The Jurisdiction Stripping Statute*

The jurisdiction stripping provision found in 8 U.S.C. § 1252(a)(2)(B)(ii) bars courts from reviewing any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii). The Fifth Circuit's decision in *Zhao v. Gonzales*, 404 F.3d 295 (5th Cir. 2005), offers a "clear and consistent roadmap for interpreting" this provision. *Ayanbadejo v. Chertoff*, 517 F.3d 273, 276 (5th Cir. 2008). The *Zhao* Court noted: "One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. That reading, however, is incorrect, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review discretionary authority *specified in the statute*." *Zhao*, 404 F.3d at 303 (emphasis in original). As the Supreme Court recently noted, "[T]he statutory proscription Congress enacted, § 1252(a)(2)(B)(ii), speaks of authority 'specified' – not merely assumed or contemplated – to be in the Attorney General's discretion. 'Specified' is not synonymous with 'implied' or 'anticipated.'" *Kucana v. Holder*, 130 S. Ct. 827, 834 n.10 (2010) (citing WEBSTER'S NEW COLLEGIATE DICTIONARY 1116 (1974)). Thus, the jurisdiction stripping statute requires courts "to look at the statutory text

and determine whether it grants the Attorney General discretion – if it does, then the case must be dismissed for lack of subject matter jurisdiction." *Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 736 (S.D. Tex. 2009).

The statute at issue here is 8 U.S.C. § 1255(a). It provides that the Attorney general may, "in his discretion and under such regulations as he may prescribe," adjust an alien's status to legal permanent resident. Thus, district courts lack subject matter jurisdiction to review the substantive grant or denial of an immigrant's I-485 application for adjustment of status. However, Zhu's challenge is not to the ultimate adjudication of her application, but rather, to USCIS's decision *not* to adjudicate it until a visa becomes available. Some background information regarding the adjustment of status application process is appropriate before the Court evaluates whether the Attorney General is acting within his discretionary authority in this context.

### B. The Adjustment of Status Application Process

Adjustment of status is a long and discretionary process through which an alien physically present in the United States may obtain permanent resident status without leaving the country. *See* 8 U.S.C. § 1255(a); *Ahmed v. Gonzales*, 447 F.3d 433, 439 (5th Cir. 2006). The Attorney General[3] may grant a legally admitted alien's application for adjustment of status, "in his discretion and under such regulations as he may prescribe," if: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant

---

[3]The Attorney General's authority has been delegated to the Secretary of Homeland Security and USCIS. *See* 6 U.S.C. § 271(b)(5).

visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

The third of these elements is particularly relevant here. Because demand for immigrant visas typically exceeds supply, the Department of State places applicants on a waiting list based on their priority date and preference category. 8 C.F.R. § 245.1(g)(1). An applicant is ineligible to apply for an adjustment of status until a visa is "immediately available," in that the applicant "has a priority date on the waiting list which is earlier than the date shown in the [Department of State] Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current)."[4] *Id.*

However, even where an immigrant visa is immediately available at the time of filing, the priority date cutoffs may retrogress while USCIS is processing the immigrant's I-485 application. *See, e.g.*, *Masih v. Mukasey*, 536 F.3d 370, 374 (5th Cir. 2008). Thus, an immigrant visa may no longer be available at the time that USCIS determines that approval is appropriate. In this circumstance, USCIS may not grant an adjustment of status, as the Department of State cannot allocate a visa to the immigrant. *See* 8 C.F.R. § 245.2(a)(5)(ii) ("An application for adjustment of status shall not be approved until an immigrant visa

---

[4]The Department of State Visa Bulletin, published monthly, summarizes the availability of immigrant numbers for each permanent residence category according to priority date. *See, e.g.*, Department of State, Visa Bulletin for April 2010, http://www.travel.state.gov/visa/frvi/bulletin/bulletin_4747.html (last visited March 23, 2010).

number has been allocated by the Department of State.").[5] Rather than deny the application outright,[6] it is USCIS's practice to wait until a visa is available to the immigrant before it adjudicates the adjustment of status application. *See Masih*, 536 F.3d at 374 (quoting USCIS OPERATIONS INSTRUCTION 245.4(a)(6): "[w]hen a properly filed application cannot be completed solely because visa numbers became unavailable subsequent to the filing, the application will be held in abeyance until a visa number is allocated.").

Zhu finds herself in this unlucky circumstance. Her visa category was current when she filed her I-485 petition. Since that time, her visa category retrogressed and, today, there are no visa numbers available in her preference category. USCIS indicates that it has processed Zhu's claim as fully as possible and is now waiting to adjudicate her claim until

---

[5]According to the Ninth Circuit: "Section 245.1(g)(1) [availability of a visa] refers to *eligibility* for adjustment of status, the question of whether an applicant can demonstrate that she is entitled to adjustment of status. In contrast, section 245.2(a)(5)(ii) [allocation of a visa] . . . describes a *mechanical requirement* necessary to actually adjust status, one that does not defeat eligibility but which may affect processing of an approved petition." *Hernandez v. Ashcroft*, 345 F.3d 824, 844 n. 21 (9th Cir. 2003); *see also Masih*, 536 F.3d at 374 (citing *Hernandez*, 345 F.3d at 843-44).

[6]*See Wang v. Chertoff*, 632 F. Supp. 2d 211, 213 (W.D.N.Y. 2009) (citing 8 C.F.R. § 245.2(a)(5)(ii)) ("Were the Court to order immediate adjudication of the plaintiffs' applications, USCIS would be compelled to simply deny them due to the unavailability of visa numbers, placing plaintiffs in a worse position, in terms of work authorization eligibility and advance parole for travel, than their current application status of 'pending' allows.")

her visa category is current.[7]  With this factual context in mind, the Court turns to whether it has jurisdiction to evaluate Zhu's claim.

### C. Judicial Review of Claims for Unreasonable Delay in Adjudication of I-485 Applications

On the face of her claim, Zhu alleges unreasonable delay in the adjudication of her I-485 application. Whether courts may review allegations of unreasonable delay in this context is a subject of frequent debate. "[W]hile this issue remains 'open' it does not remain unexplored." *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 544-45 (S.D.N.Y. 2008) (collecting cases). District courts across the country split over the issue. *Compare, e.g.*, *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007) (finding that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the court of subject matter jurisdiction); *Tao Luo v. Keisler*, 521 F. Supp. 2d 72, 73-74 (D.D.C. 2007) (same); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1355 (S.D. Fla. 2007) (same); *Touarsi v. Mueller*, 538 F. Supp. 2d 447, 450-52 (D. Mass. 2008) (same); *Safadi v. Howard*, 466 F. Supp. 2d 696, 698-700 (E.D. Va. 2006) (same); *Bugulu v. Gonzalez*, 490 F. Supp. 2d 965, 967 (W.D. Wis. 2007) (same) *with Kashkool v. Chertoff*, 553 F.Supp. 2d 1131, 1139 (D. Ariz. 2008) (finding that 8 U.S.C. § 1252(a)(2)(B)(ii) does not strip the court of subject matter jurisdiction); *Haiming Tang v. Chertoff*, 2007 WL 1650938, at *2 (N.D. Cal. 2007) (same); *Kamal v. Gonzales*, 547 F. Supp. 2d 869, 875 (N.D. Ill. 2008) (same); *Burni v. Frazier*, 545 F. Supp. 2d 894, 902 (D. Minn. 2008) (same); *Panchishak v.*

---

[7]The current Department of State Visa Bulletin indicates that a visa may be available to allocate to Zhu's application in April 2010. *See* Department of State, Visa Bulletin for April 2010, http://www.travel.state.gov/visa/frvi/bulletin/bulletin_4747.html (last visited March 23, 2010).

*Dept. of Homeland Sec.*, 2009 WL 2135299 (S.D.N.Y. 2009) (same); *Villa v. Dept. of Homeland Sec.*, 607 F. Supp. 2d 359, 362 (N.D.N.Y. 2009) (same).

Even courts within this Circuit reach different conclusions about whether the pace of adjudication is discretionary. *Compare, e.g.*, *Li v. Heinauer*, 2008 WL 648538, at *2-4 (E.D. Tex. 2008) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the court of subject matter jurisdiction to review delay in adjudication an I-485 application because the pace of adjudication is discretionary); *Yang v. Chertoff*, 2008 WL 151063, at *2-3 (S.D. Tex. 2008) (same); *Abanov v. Gonzales*, 2007 WL 2872765, at *3-5 (S.D. Tex. 2007) (same); *Osakwe v. Dep't of Homeland Sec.*, 2007 WL 1886249, at *2-5 (S.D. Tex. 2007) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the court of subject matter jurisdiction to review delay in adjudicating an N-400 application for naturalization because "pace of adjudication is within the discretion of the CIS") *with Garrido v. Mueller*, 2008 WL 89631, at *4 (N.D. Tex. 2008) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) does not strip the court of subject matter jurisdiction because the complaint does not relate to a decision or action of the Attorney General, but rather a failure to decide or act); *Akhtar v. Dept. of Homeland Sec.*, 2007 WL 4445236, at *2-3 (N.D. Tex. 2007) (same); *Ahmadi v. Chertoff*, 522 F. Supp. 2d 816, 819 (N.D. Tex. 2007) (same); *Elmalky v. Upchurch*, 2007 WL 944330, at *4 (N.D. Tex. 2007) (same).

There are essentially two competing approaches to the issue. Most courts that hold that the jurisdiction stripping statute precludes review of unreasonable delay claims rely on reasoning explained in *Safadi*. *See* 466 F. Supp. 2d at 698-701. There, the court first found

that the word "action" in § 1252(a)(2)(B)(ii) "encompasses any act or series of acts that is discretionary within the adjustment of status process," including "the completion of background and security checks and the pace at which the process proceeds." *Id.* at 699. Moreover, it "concluded that limiting the term 'action' to encompass only a final decision 'fails as it would impermissibly render the word action superfluous' in the phrase 'decision or action.'" *Tao Luo*, 521 F. Supp. 2d at Id. at 74 (quoting *Safadi*, 466 F. Supp. 2d at 700)); *see also Abanov*, 2007 WL 2872765, at *5. In addition, the Court noted the national security concerns in play: "Nonetheless, in this post-9/11 world USCIS must carefully and thoroughly investigate adjustment applications to ensure they are not granted without the appropriate good cause. Our national security requires that caution and thoroughness in these matters not be sacrificed for the purpose of expediency." *Safadi*, 466 F. Supp. 2d at 701. Many courts rely on this rationale in holding that 8 U.S.C. 1252(a)(2)(B) bars judicial review.

On the other hand, courts that hold that the jurisdiction stripping statute does not preclude judicial review tend to view USCIS's delay as a *failure to act* rather than an "action," as defined in the statute. *See, e.g.*, *Garrido*, 2008 WL 89631, at *4; *Akhtar*, 2007 WL 4445236, at *2. As the *Akhtar* court explained, "plaintiffs are not asking for judicial review of a 'judgment' made by USCIS; rather, they are simply seeking relief for defendants' failure to act within a reasonable time. Indeed, when USCIS fails to adjudicate an application for adjustment of status, it has not effectively made a 'judgment' at all and § 1252's preclusion of judicial review is inapplicable." *Akhtar*, 2007 WL 4445236, at *2. In addition, many courts – including this one – note that although USCIS has the discretion

to grant or deny an application for adjustment of status, the ministerial duty to make a decision one way or the other is not discretionary. *See, e.g.*, *Ahmadi*, 522 F. Supp. 2d at 818.[8] Thus, such courts conclude that judicial review of claims of unreasonable delay is appropriate.

However, this case involves a wrinkle that neither viewpoint fully takes into account. Although Zhu couches her complaint as one for "unreasonable delay" in the adjudication of her I-485 application, the central source of the alleged delay is USCIS's decision, established by 8 C.F.R. § 245.2(a)(5)(ii) and implementing 8 U.S.C. § 1255(a), to wait until the Department of State allocates a visa to Zhu before it issues adjudicates her application.[9] Unlike *Akhtar*, *Ahmadi*, *Elmalky*, and other similarly situated cases, the plaintiff's claim here implies a challenge not to agency *inaction*, but rather to USCIS's affirmative decision to

---

[8]Zhu relies on *Alsharqawi v. Gonzales*, 2007 WL 1346667, at *3-5 (N.D. Tex. 2007), in which this Court held that the Government had a nondiscretionary duty to adjudicate an I-130 application for adjustment of status in a reasonable time. Because the case involved an I-130 application rather than an I-485 application, 8 U.S.C. 1252(a)(2)(B) did not apply.

Moreover, the statutory text at issue in *Alsharqawi* differed in significant respects from the statutory text at issue here. *Compare* 8 U.S.C. § 1154(b) ("After an investigation of the facts in each case . . . the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) . . . approve the petition . . . .") *with* 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States . . . *may* be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . .") (emphasis added); *see also Ayanbadejo v. Chertoff*, 517 F.3d 273, 276-78 (5th Cir. 2008).

[9]From the time that USCIS received all of the information it required to date, Zhu's visa category was current for a total of 19 days. *See* App. to Defs.' Mot. to Dismiss [7] at 8-10. The Court does not interpret Zhu's complaint to allege that this 19 day period, standing alone, constituted unreasonable delay.

ORDER – PAGE 11

suspend adjudication of her application because no visa numbers are available (rather than deny it outright). Here, the delay is an intentional choice on the part of the agency, driven not by the volume of applications or the often slow pace of application processing, but rather by its decision to stay adjudication until the Department of State Visa Bulletin indicates that Zhu may receive an immigrant visa.

Congress expressly provided that the adjudication of I-485 applications falls within the discretion of the Attorney General. Section 1255(a) indicates that an alien's status "*may be adjusted by the Attorney General in his discretion and under such regulations as he may prescribe . . . .*" (emphasis added).[10] The agency promulgated 8 C.F.R. § 245.2(a)(5)(ii) – a mechanical implementation of section 1255(a)(3) – pursuant to the discretionary authority provided in the statute.[11] Thus, USCIS's election to wait to process Zhu's visa application until it can adjudicate it favorably constitutes a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland .

---

[10]Unlike *Kukana*, the source of the agency's discretion is the relevant statute – 8 U.S.C. § 1255(a) – not a regulation. *See Kukana*, 130 S. Ct. at 835.

[11]In *Akhtar*, *Ahmadi*, *Elmalky*, the source of the alleged delay was the FBI's failure to complete name and background checks. As this Court discussed in *Ahmadi*, the requirement that USCIS undergo a full background check before it adjudicates an adjustment of status application appears nowhere in the statutory text. Rather, it is the agency's interpretation of 8 U.S.C. § 1105(a), which authorizes the agency to "maintain direct and continuous liaison with the [FBI] . . . for the purpose of obtaining and exchanging information for use in enforcing the provisions of [the Immigration and Nationality Chapter] in the interest of the internal and border security of the United States." *See Ahmadi*, 522 F. Supp. 2d at 820. Here, on the other hand, section 1255(a)(3) expressly requires visa availability at the time of filing.

. . ." 8 U.S.C. § 1252(a)(2)(B)(ii). Because Zhu's claim is – at its core – a challenge to an agency decision that is within its discretion, the Court holds that it lacks subject matter jurisdiction to consider Zhu's claim.

### IV. THE MANDAMUS STATUTE, THE APA, AND THE DECLARATORY JUDGMENT ACT DO NOT INDEPENDENTLY CONFER SUBJECT MATTER JURISDICTION

The jurisdiction stripping statute expressly precludes judicial review notwithstanding the Mandamus Act or any other provision of law. 8 U.S.C. 1252(a)(2)(B). Thus, Zhu cannot rely on the Mandamus Act, the Administrative Procedure Act, or the Declaratory Judgment Act to restore the Court's subject matter jurisdiction. *See id.* However, even assuming subject matter jurisdiction did exist, the Court would dismiss Zhu's claims for essentially the same reasons. The Mandamus Act does not confer jurisdiction because the Defendants do not have a "clear nondiscretionary duty" to process Zhu's I-485 adjustment of status application in the absence of available visa numbers. *See Allied Chem Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Likewise, the APA does not confer jurisdiction because judicial review is unavailable where the agency action in question is "committed to agency discretion by law." 5 U.S.C. § 701(a). Finally, the Declaratory Judgment Act is not an independent source of subject matter jurisdiction. *See Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Thus, Zhu's claim would not survive the Defendants' motion to dismiss in any event.

### CONCLUSION

Because the Court finds that it lacks subject matter jurisdiction to consider Zhu's claim, it grants the Defendants' motion to dismiss. However, the Court limits its holding in this case to the very narrow issue presented: whether it has subject matter jurisdiction to review a claim that USCIS failed to adjudicate an I-485 adjustment of status application in a reasonable time when, for the vast majority of that time, no visa numbers were available to allocate to the immigrant. The Court notes that Zhu's visa category will be current as of April 2010, meaning that 8 C.F.R. § 245.2(a)(5)(ii) will no longer apply. If the government fails to adjudicate Zhu's application in a reasonable time once visa numbers are available, she may re-file her case. Thus, the Court's dismissal is without prejudice.

Signed March 24, 2010.

_____
David C. Godbey
United States District Judge